**United States District Court**
For the Northern District of California

1
2
3
4
5
6                          UNITED STATES DISTRICT COURT
7                      NORTHERN DISTRICT OF CALIFORNIA
8
9    JAVIER DIEGO URIBE,                         No. C 03-5700 SI (pr)
10                  Petitioner,                  **ORDER DENYING PETITION FOR
                                                 WRIT OF HABEAS CORPUS**
11          v.
12   MICHAEL KNOWLES, Warden,
13                  Respondent.
14   _____/
15                              **INTRODUCTION**
16          Javier Diego Uribe, a California prisoner incarcerated at Mule Creek State Prison, has filed
17   this pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now
18   before the court for consideration of the merits of the habeas petition. For the reasons discussed
19   below, the petition will be denied.
20
21                              **BACKGROUND**
22   A.     The Crimes
23          Uribe was convicted of sex offenses against four minors: committing lewd acts on Jane
24   Doe 1 (14 counts), Jane Doe 3 (1 count) and Jane Doe 4 (1 count), as well as one count of
25   committing a forcible lewd act on Jane Doe 2. At the trial, evidence also was presented of his sex
26   offense against an 11-year old (Katherine M.) that led to a sexual battery conviction several years
27   earlier. The evidence at trial included the following, which is largely taken from the California
28   Court of Appeal's opinion and the parties' briefs.

Uribe knew Jane Doe 1 through his friendship with Jane Doe 1's mother and grandmother. Jane Doe 1 was eight years old and in third grade at the time of the first touching incident. The touchings stopped after the December 17, 1999 incident, when Jane Doe 1 was in fifth grade. The touchings occurred at a variety of times and places and the behavior included touching Jane Doe 1's vagina over and under her clothing, touching her buttocks, putting his fingers inside her vagina, and putting his mouth on her vagina and licking it.

Following the last molestation on December 17, 1999, Jane Doe 1 told several friends "that there was a guy touching on [her]" and she told them Uribe's first name. Jane Doe 1 also told her younger brother, who then told his friend Andrew, and Andrew told his grandmother. The grandmother was a friend of Jane Doe 1's family and on December 20, 1999 asked Jane Doe 1 if Uribe had been touching her. Jane Doe 1 admitted Uribe had "messed with her" and pointed to her vagina. The grandmother then called Jane Doe 1's mother, and Jane Doe 1 told her mother some details about the molestations.

Jane Doe 1's mother took Jane Doe 1 to the hospital. While there, Jane Doe 1 met with a police officer. On December 22, 1999, Jane Doe 1 spoke with a social worker in the presence of a different police officer, Officer Judy Stradan. On December 23, 1999 at the request of Officer Stradan, Jane Doe 1 called Uribe on the telephone. The phone call was tape recorded. Uribe made numerous incriminating statements. Uribe essentially admitted touching Jane Doe 1's vagina and putting his mouth on her vagina when, in response to Jane Doe 1's query about those acts, Uribe asserted, "We were playing." When Jane Doe 1 asked why he "put his fingers up [her] vagina," Uribe made a similar admission: "Because I like it." Following this pretext phone call, police arrested Uribe.

Based on information provided by Jane Doe 1, an investigator from the district attorney's office went to an apartment complex at which Uribe had resided. The investigator discovered that a number of complaints had been filed with the complex's security office in 1997, alleging Uribe had molested or bothered other young girls. The investigation into these incidents led to the charges involving Jane Doe 2, Jane Doe 3, and Jane Doe 4.

United States District Court

For the Northern District of California

Uribe molested Jane Doe 2, then 11 years old, in July 1996 when he was at her apartment. Uribe entered her room, closed the door and put a chair under the knob to prevent it from being opened. He then got on top of Jane Doe 2 on the bed. He rubbed her breast with one hand and covered her mouth with another hand. He tried to take off her jacket and he tried to kiss her.

Uribe's's encounters with Jane Doe 3, fourteen years old at the time of trial, included one incident where he grabbed and pulled her onto his lap, another incident where he removed his shirt and pants and stood in front of her in his underwear, and another incident where he got on top of her in his bedroom.

Uribe's encounters with Jane Doe 4, fourteen years old at the time of trial, included incidents where he rubbed her buttocks and tried to pull her into his apartment.

B.    Case History

Following a jury trial in Monterey County Superior Court, Uribe was convicted of sixteen counts of engaging in a lewd act upon a child and one count of engaging in a forcible lewd act upon a child. As to each count, the jury found true the One Strike law allegation that Uribe committed qualifying offenses against multiple victims. Uribe was sentenced on December 14, 2001 to a total term of 100 years to life in prison.

Uribe unsuccessfully appealed. The California Court of Appeal affirmed the judgment of conviction with a sentence modification and denied Uribe's petition for writ of habeas corpus. The California Supreme Court denied the petition for review.

Uribe then filed this action. His federal habeas petition raises seven claims: (1) his rights to due process and a fair trial were violated when the court denied his motion to exclude his coerced statement to the police, (2) his rights to due process, a fair trial and equal protection were denied when the trial court admitted evidence of his prior misconduct under California Evidence Code section 1108, (3) his rights to due process and a fair trial were violated by the use of the CALJIC 2.50.01 jury instruction, (4) his rights to due process, a fair trial and a jury determination on all issues were violated by the court's failure to correctly instruct on probation eligibility, (5)

his right to counsel was violated when the trial court failed to conduct an adequate inquiry about his complaints against his attorney, (6) his rights to due process and to be free from double jeopardy were violated by the sentence imposed for multiple victims, and (7) the cumulative effect of the foregoing errors deprived him of his rights to due process and a fair trial. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer and petitioner filed a traverse. The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Monterey County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

1   determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

2   on an unreasonable determination of the facts in light of the evidence presented in the State court

3   proceeding."  28 U.S.C. § 2254(d).

4      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

5   arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

6   the state court decides a case differently than [the] Court has on a set of materially

7   indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

8       "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

9   the state court identifies the correct governing legal principle from [the] Court's decisions but

10   unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal

11   habeas court may not issue the writ simply because that court concludes in its independent

12   judgment that the relevant state-court decision applied clearly established federal law erroneously

13   or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas

14   court making the "unreasonable application" inquiry should ask whether the state court's application

15   of clearly established federal law was "objectively unreasonable."  Id. at 409.

16

17                                **DISCUSSION**

18   A.   Admission of Uribe's Confession To The Police

19      Uribe alleges his rights to due process and a fair trial were violated when the court denied

20   his motion to exclude his involuntary statements to the police. He contends his statements were

21   based on repeated promises of both legal and medical help as well as reduced jail time -- all of

22   which were conditioned upon Uribe giving a statement confirming Jane Doe 1's accusations.

23   Uribe's statements were made to police officer Stradan during a 30-minute interview conducted

24   about an hour after his arrival at the police station following his arrest.  Before the allegedly

25   coerced statements were  made, Uribe had made a phone call, had been advised of his Miranda

26   rights, and (during the interview) had already made some very damaging admissions.

27      The California Court of Appeal rejected Uribe's claim that his confession was coerced.

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Cal. Ct. App. Opinion, pp. 24-26. That court did not address whether the confession was coerced

2   but instead concluded that any error that might have occurred was harmless. The court reasoned:

> First, defendant had already admitted touching Jane Doe 1 on the buttocks and legs. Since
> "any touching" can constitute a lewd act under section 288, subdivision (a), these
> admissions were significant. Second, the evidence at trial was very strong. Jane Doe 1
> recounted specific details of many touching incidents. She was able to pinpoint many dates
> and the places where the touchings occurred. She provided additional details regarding the
> circumstances of the touchings. She made spontaneous disclosures to friends at school.
> Although she did not provide details about the various touchings at first, she did provide
> such details a few days later, when she felt more comfortable talking to the female social
> worker. Finally, the admissions defendant made during the pretextual call were very
> damaging. He essentially admitted touching Jane Doe 1's vagina and putting his mouth on
> her vagina when, in response to Jane Doe 1's query about those acts, defendant asserted,
> "We were playing." When Jane Doe 1 asked why he "put his fingers up [her] vagina,"
> defendant made a similar admission: "Because I like it." In light of these factors, we
> conclude, beyond a reasonable doubt, that defendant was not prejudiced by any error with
> regard to the admission of his police interview.

11  Cal. Ct. App. Opinion, p. 26. The California Court of Appeal identified and applied the harmless

12  error standard from Chapman v. California, 386 U.S. 18, 24 (1967). Cal. Ct. App. Opinion, p. 25.

13      The erroneous admission of a coerced confession is subject to harmless error analysis.

14  Fulminate v. Arizona, 499 U.S. 279, 306-12 (1991). If, on direct review, the state court disposed

15  of a constitutional error as harmless under an appropriate standard of review, federal courts must,

16  for purposes of application of the "unreasonable application" clause of § 2254(d)(1), determine

17  whether the state court's harmless error analysis was objectively unreasonable. Medina v.

18  Hornung, 386 F.3d 872, 878 (9th Cir. 2004).

19      The California Court of Appeal's harmless error analysis was not objectively unreasonable.

20  The state court correctly identified the Chapman standard as the applicable standard of review on

21  direct appeal and reasonably applied it. This court agrees with the state court's conclusion that any

22  error was harmless. Before any of the allegedly coercive comments were made, Uribe had already

23  admitted some lewd conduct to officer Stradan and had already admitted the most serious sex

24  offenses during the recorded telephone call with Jane Doe 1. Both those statements were

25  admitted at trial and were not possibly tainted by any coercion that may have later occurred. Jane

26  Doe 1's own detailed account of Uribe's conduct in her testimony at trial also provided persuasive

27  independent evidence of Uribe's criminal conduct. The believability of Jane Doe's complaints was

28

strengthened by evidence that other girls had independently complained of Uribe's similar sex offenses against them. Uribe is not entitled to the writ on his claim that his constitutional rights were violated by admission of evidence of an allegedly coerced confession.

B.    Propensity Evidence

Uribe next asserts that the admission of evidence of his prior sex offense conviction under California Evidence Code section 1108 violated his constitutional rights to due process and equal protection.

California Evidence Code section 1101 provides, in relevant part: "(a) Except as provided in this section and Section[] . . . 1108, . . . evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion."

California Evidence Code section 1108(a), states, in relevant part, that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

California Evidence Code section 352 permits the court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of under prejudice, of confusing the issues, or of misleading the jury."

The prosecution moved to introduce Uribe's prior sexual offense conviction for misdemeanor sexual battery under section 1108, arguing the evidence was admissible under sections 1101 and 1108 and pointing out the similarities between the charged and uncharged offenses. After a hearing on the matter, the trial court found the evidence admissible under section 1108 and specifically found that its high probative value outweighed any prejudicial effect.

On appeal the California Court of Appeal rejected Uribe's claims. Relying on the California Supreme Court's earlier opinion in People v. Falsetta, 21 Cal. 4th 903 (1999), which rejected constitutional challenges to section 1108, the California Court of Appeal summarily

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   rejected Uribe's due process and equal protection arguments. The California Court of Appeal then

2   found that the trial court did not abuse its discretion under section 352 by determining that the

3   probative value of the evidence of defendant's uncharged offenses outweighed its prejudicial

4   effect.

5

6          1.   <u>Due Process</u>

7        A state's criminal law (such as an evidence law pertaining to criminal trials) does not violate

8   the Fourteenth Amendment's Due Process Clause "'unless it offends some principle of justice so

9   rooted in the traditions and conscience of our people as to be ranked as fundamental.'" <u>Montana</u>

10   <u>v. Egelhoff</u>, 518 U.S. 37, 43 (1996) (citation omitted). "It is not the State which bears the burden

11   of demonstrating that its rule is deeply rooted, but rather respondent who must show that the

12   principle of procedure <u>violated</u> by the rule (and allegedly required by due process) is so rooted

13   in the traditions and conscience of our people as to be ranked as fundamental." <u>Id.</u> at 47 (citation

14   and internal quotations omitted; emphasis in original) (rule that intoxication may be considered

15   on the question of intent was not so deeply rooted as to be a fundamental principle enshrined by

16   the Fourteenth Amendment). But simply finding a historical basis for or against a rule is not

17   enough: "The Constitution does not encompass all traditional legal rules and customs, no matter

18   how longstanding and widespread such practices may be. The Supreme Court has cautioned against

19   the wholesale importation of common law and evidentiary rules into the Due Process Clause of

20   [the] Constitution" <u>United States v. LeMay</u>, 260 F.3d 1018, 1024-25 (9th Cir. 2001) <u>cert. denied</u>,

21   534 U.S. 1166 (2002).

22        No federal appellate court has yet reached the constitutionality of California Evidence

23   Code section 1108. However, section 1108 is analogous to Federal Rule of Evidence 414, which

24   governs the admissibility of evidence of prior conduct in cases of child molestation in federal

25   court. The Ninth Circuit has rejected due process and equal protection challenges to Rule 414,

26   and its reasoning guides this court's consideration of the very similar California law. <u>See</u> <u>LeMay</u>,

27   260 F.3d at 1024, 1030. Rule 414 states that "evidence of the defendant's commission of another

28

United States District Court

For the Northern District of California

offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Rule 414 does not violate due process because Rule 403 (the federal analog to California Evidence Code section 352) functions as a filter, resulting in the exclusion of evidence that is so prejudicial as to deprive the defendant of his right to a fair trial. Id. at 1026. In other words, the "application of Rule 403 to Rule 414 evidence eliminates the due process concerns posed by Rule 414." LeMay, 260 F.3d at 1027 (quoting United States v. Castillo, 140 F.3d 874, 881 (10th Cir. 1998)).

California Evidence Code section 1108 functions in a similar fashion to Federal Rule of Evidence 414. Section 1108 allows for the introduction of evidence of prior sex offenses by a defendant accused of a sex offense and is subject to section 352 which excludes unduly prejudicial evidence. Like Rule 414, section 1108 does not pose a due process concern because the section 352 filter (the state analog to the Rule 403 filter) does not allow the admission of section 1108 evidence which is so prejudicial as to preclude the right to fair trial guaranteed by the Due Process Clause. Uribe has not shown "that the traditional ban on propensity evidence involves a 'fundamental conception of justice'" which is violated by section 1108. See LeMay, 260 F.3d at 1025. He thus has not shown that section 1108, which allows propensity evidence in the limited area of sex offense cases, on its face violates due process.

Section 1108 also did not violate due process as it was applied in Uribe's case. "The evidence of defendant's sexual offenses against Katherine M. had substantial probative value in demonstrating defendant's disposition to commit lewd acts upon young girls." Cal. Ct. App. Opinion, p. 28.

> The offenses against Katherine M. were quite similar to the offenses against Jane Does 1-4… [and] the evidence of defendant's offenses against Katherine M. had an "independent source," as Katherine had reported the crimes well before defendant committed the crimes against Jane Does 1-4…. By contrast, the potential for prejudice, jury confusion, or undue consumption of time posed by this evidence was low. The jury knew that defendant's acts against Katherine M. resulted in a conviction and jail time. Thus, "the jury was not tempted to convict defendant of the charged offenses, regardless of his guilt, in order to assure that he would be punished for the uncharged offenses…." [Citation] Further, "the attention of the jury was not diverted to a determination whether or not defendant had committed the uncharged offenses, because that fact had been determined conclusively by the resulting . . . conviction." [citation].

United States District Court

For the Northern District of California

Cal. Ct. App. Op. pp. 28-29. Because the jury could draw from the evidence of Uribe's prior sex offense the permissible inferences that he had the propensity to commit sex offenses against minors and did commit the sex offenses charged in the present case, the admission of the evidence that he had committed sexual battery on Katherine M. did not violate Uribe's right to due process. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

A further reason Uribe is not entitled to the writ is because he has not shown that the California Court of Appeal's rejection of his due process claim was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the Ninth Circuit has recognized, there is not much in the way of clearly established law on the propensity evidence question. "[T]he Supreme Court has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes. Indeed, the Supreme Court has expressly declined to answer these questions, see Estelle [v. McGuire, 502 U.S. 62, 75 n.5 (1991)] ('Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime')." Garceau v. Woodford, 275 F.3d 769, 774-75 (9th Cir. 2001), reversed on other grounds by 538 U.S. 202 (2003).

2.   Equal Protection

The Ninth Circuit's decision in LeMay also guides this court's analysis of Uribe's equal protection claim. In LeMay, the court held that Federal Rule of Evidence 414 did not violate the Equal Protection Clause of the Fourteenth Amendment. First, the rule did not discriminate against any group of individuals on the basis of a suspect or quasi-suspect class. LeMay, 260 F.3d at 1030. Second, Rule 414 did not infringe on a fundamental right, because defendants had "no fundamental right to have a trial free from relevant propensity evidence that is not unduly

**United States District Court**
For the Northern District of California

prejudicial." Id. at 1030.  Because the Rule did not make distinctions based on a suspect class, or infringe a fundamental right, the Rule needed only to bear a "reasonable relationship to a legitimate government interest." Id. at 1031.  Prosecuting crime is a legitimate government interest, and Rule 414 allowed prosecutors to introduce relevant evidence in furtherance of that state interest. Id.

Just as the class of child molesters was considered not a suspect class in LeMay, the class of accused sex offenders is not a suspect class here.  Section 1108 does not infringe on a fundamental right because there is no fundamental right to have a trial free from relevant propensity evidence that is not unduly prejudicial.  Section 1108 need only bear a reasonable relationship to a legitimate government interest.  It does so by aiding the effective prosecution of a quintessentially secretive crime by allowing the introduction of relevant evidence in sex offense cases.  See People v. Falsetta, 21 Cal. 4th 903, 915 (Cal. 1999) ("the Legislature's principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence").  Uribe has not shown that the application of § 1108 in his case violated his right to equal protection of the laws.

C.    The Jury Instructions Regarding The Prior Sex Offenses

1.    Background

Uribe contends that his right to due process was violated because the jury instructions could have been understood by a jury to permit his conviction based solely upon the fact of his prior sex offense and without finding each fact necessary to support the conviction beyond a reasonable doubt.

The jury was given these instructions on the use of the prior sex offenses evidence:

Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on one or more occasions other than those charged in the case. [¶] Sexual offense means a crime under the laws of a state or of the United States that involves any of the following: [¶] Any conduct made criminal by Penal Code Section 288(a) or 288(b)(1). The elements of these crimes are set forth elsewhere in these instructions. [¶] If you find that the defendant committed other sexual offenses you may, but are not

required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused. [¶] However, if you find by a preponderance of the evidence that the defendant committed other sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. The weight and significance of the evidence, if any, are for you to decide. You must not consider this evidence for any other purpose.

Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses other than those for which he is on trial. [¶] You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other sexual offenses.

CT 1044-1045 (brackets omitted); CALJIC 2.50.01 (2001 revision), CALJIC 2.50.1. The trial judge then instructed: "I want to emphasize that the preponderance standard applies only to the noncharged offenses. It does not lessen or change the People's burden to prove each and every element of the charged crimes beyond a reasonable doubt, not by a preponderance of the evidence." RT 3400. The jury also was instructed on the preponderance of the evidence standard, CT 1046, and was given the following standard reasonable doubt jury instruction:

A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt. [¶] Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

CT 1056; CALJIC 2.90.

The California Court of Appeal rejected Uribe's claim of instructional error, following the reasoning of People v. Reliford, 29 Cal. 4th 1007, 1009 (Cal. 2003), which had determined that the 1999 version of CALJIC No. 2.50.01 correctly stated the law. Ct. App. Opinion, pp. 30-31. The Reliford court had found no reasonable likelihood under the instructions given that the jury would conclude it could convict appellant of the current offense solely because it found that he had committed a similar prior sexual offense. See Reliford, 29 Cal. 4th at 1015-16. In rejecting Uribe's claim, the California Court of Appeal reasoned that, by giving the 2001 revised version of CALJIC 2.50.01, the trial court ensured that the jury would understand and reconcile the distinction between the preponderance of the evidence standard applicable to proof of prior sex

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   crimes, and the burden to prove each element of the current offenses beyond a reasonable doubt

2   by giving the additional cautionary instruction emphasizing that "the preponderance standard

3   applies only to the noncharged offenses" and that the People still had the burden "to prove each

4   and every element of the charged crimes beyond a reasonable doubt, not by a preponderance of the

5   evidence." Cal. Ct. App. Opinion, pp. 30-31.

6

7         2.   <u>Analysis</u>

8         To obtain federal collateral relief for errors in the jury charge, a petitioner must show that

9   the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

10  process. See <u>Estelle v. McGuire</u>, 502 U.S. at 71-72.  It is beyond dispute that the Fourteenth

11  Amendment's Due Process Clause requires that a defendant be presumed innocent until proven

12  guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt

13  and that the jury be properly instructed that a defendant is presumed innocent until proven guilty

14  beyond a reasonable doubt.  <u>Gibson v. Ortiz</u>, 387 F.3d 812, 820 (9th Cir. 2004)  "Any jury

15  instruction that 'reduce[s] the level of proof necessary for the Government to carry its burden . . .

16  . is plainly inconsistent with the constitutionally rooted presumption of innocence.'" <u>Id.</u> (quoting

17  <u>Cool v. United States</u>, 409 U.S. 100, 104 (1972)).  So long as the trial court instructs jury on the

18  necessity that defendant's guilt be proven beyond a reasonable doubt, the Constitution does not

19  require that any particular form of words be used in advising the jury of the government's burden

20  of proof. See <u>Gibson</u>, 387 F.3d at 825.

21        In reviewing an ambiguous instruction, the court must inquire whether there is a reasonable

22  likelihood that the jury has applied the challenged instruction in a way that violates the

23  Constitution. See <u>Estelle</u>, 502 U.S. at 72 & n.4; <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990).[1]

24  A determination that there is a reasonable likelihood that the jury has applied the challenged

25  instruction in a way that violates the Constitution establishes only that an error has occurred,

26

27        [1]If the instruction describes the burden of proof incorrectly, rather than is merely
    ambiguous, the <u>Estelle</u> approach does not apply. See <u>Gibson</u>, 387 F.3d at 822 n.8. This is not a
28  case of misdescription of the burden of proof.

however.  See Calderon v. Coleman, 525 U.S. 141, 146 (1998).  If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, see Brecht, 507 U.S. at 637, before granting relief in habeas proceedings.  See Calderon, 525 U.S. at 146-47.

The jury instructions given at Uribe's trial did not incorrectly describe the burden of proof or permit conviction upon a standard less than proof beyond a reasonable doubt of every element of the charged crimes.  One of the challenged instructions given in this case is the 2001 revised version of CALJIC 2.50.01 which includes the language: "if you find by a preponderance of the evidence that the defendant committed other sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes."  Additionally, Uribe's jury received an additional admonition by the court emphasizing "that the preponderance standard applies only to the noncharged offenses.  It does not lessen or change the People's burden to prove each and every element of the charged crimes beyond a reasonable doubt, not by a preponderance of the evidence."  RT 3400. When viewed in light of the other instructions given by the court and the specific reminder from the court, the revised CALJIC 2.50.01 given at Uribe's trial made clear that even if the jury found that Uribe committed prior sexual offenses by a preponderance of the evidence and drew the inference that he was likely to commit and did commit the crimes of which he was accused, that alone was not sufficient to prove beyond a reasonable doubt that he committed the charged crimes.  There is no reasonable likelihood that the jury applied the challenged instructions to convict the Uribe upon a preponderance of the evidence or anything below proof beyond a reasonable doubt.

The instructions used at Uribe's trial were not the same as those determined to be constitutionally infirm in Gibson v. Ortiz, 387 F.3d 812. In Gibson, the jury was instructed with the pre-1999 version of CALJIC 2.50.01 which did not tell the jury that the inference it could draw from the prior sex offense was not enough to prove guilt on the charged crime beyond a reasonable doubt.  The problem was compounded by the use of a modified version of CALJIC 2.50.1 that stated the preponderance of the evidence standard as the burden of proof for prior

sexual offenses. The "interplay of the two instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the charged acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." Id. at 822. The Gibson instructions, carefully followed by the jury, would allow Gibson's conviction based on a finding made on the unconstitutionally low preponderance of the evidence standard. By contrast, Uribe's jury instructions, carefully followed by the jury, would not permit Uribe's conviction based on anything less than proof beyond a reasonable doubt of all elements of the crimes charged.

The California Court of Appeal's rejection of Uribe's claim was not contrary to or an unreasonable application of clearly established federal law. Uribe is not entitled to the writ on this claim.

D.   Sentencing Claims

Uribe contends that the trial court's failure to instruct on proof of probation ineligibility for the lewd conduct offenses violated his right to have a jury determine all the elements of a charge. See Apprendi v. New Jersey, 530 U.S. 466 (2000). Uribe further contends that he is not subject to the provisions of the One Strike law, Cal. Penal Code § 667.61, if there is a determination that he is eligible for probation, and, therefore, the jury must determine probation eligibility.   He also contends the state court did not follow state law in deciding applying the multiple victim special circumstance.   And he contends that the use of the multiple victim circumstance violated his right to be free from double jeopardy.

1.   The Probation Eligibility Issue

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 489. The statutory maximum for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1   or admitted by the defendant; that is, "the relevant 'statutory maximum' is not the maximum

2   sentence a judge may impose after finding additional facts, but the maximum he may impose

3   without any additional findings." <u>Blakely v. Washington</u>, 542 U.S. 296, ---, 124 S. Ct. 2531, 2537

4   (2004).

5          California Evidence Code section 667.61(b) provides that a "person who is convicted of

6   an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e)

7   shall be punished by imprisonment in the state prison for life and shall not be eligible for release

8   on parole for 15 years...." Subdivision (c) lists the specified offenses, including "(7) A violation

9   of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision

10  (c) of Section 1203.066." Cal. Penal Code § 667.61(c)(7).

11         Uribe does not persuade with his argument that the jury had to decide whether he qualified

12  for probation. First, the text of the state law requires the probation eligibility determination to

13  be made based on the findings of "the court," not the jury. Cal. Penal Code § 1203.066(c).

14         Second, unlike Uribe's case, <u>Apprendi</u> involved an increase to the defendant's maximum

15  possible sentence based on a factual finding by the court. A finding of probation eligibility would

16  lessen rather than increase Uribe's sentence. Even though probation would impact Uribe's

17  sentence, that alone did not require that the jury make the necessary findings because it could not

18  increase the penalty authorized by the jury's verdict.

19         Lastly, any error was harmless. See <u>Dillard v. Roe</u>, 244 F.3d 758, 773-74 (9th Cir.), <u>cert.</u>

20  <u>denied</u>, 534 U.S. 905 (2001) (fact that a jury did not find beyond a reasonable doubt that defendant

21  used a firearm in the commission of the offense was subject to the harmless error analysis set

22  forth in <u>Brecht</u>). Uribe was not eligible for probation under the terms of section 1203.066

23  because he did not meet the requirement that he be "the victim's natural parent, adoptive parent,

24  stepparent, relative, or is a member of the victim's household who has lived in the victim's

25  household." Cal. Penal Code § 1203.066(c)(1).

26

27         2.      Multiple Victim Circumstance

28

16

**United States District Court**

For the Northern District of California

1    Uribe's other sentencing claim is that the state court violated his right to due process

2    because it did not correctly interpret the state law in applying the multiple victim circumstance.[2]

3    His brief shows that he was raising a novel argument about the way the multiple victim

4    circumstance should work, and did not point to any California Court of Appeal or California

5    Supreme Court decision that was contrary to the approach taken by the California Court of Appeal

6    in this case. This court generally will not, in a habeas case, revisit a determination of state law by

7    the state appellate court. See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988) (court is not free to

8    review state court's determination of state law); cf. id. at 630 n.3 (quoting West v. American

9    Telephone & Telegraph Co., 311 U.S. 223, 237-38 (1940) (determination of state law made by

10   an intermediate appellate court must be followed and may not be "'disregarded by a federal court

11   unless it is convinced by other persuasive data that the highest court of the state would decide

12   otherwise'")). Once one accepts that California law is that the multiple victim circumstance could

13   apply to the many One Strike sentences imposed, the result for Uribe's habeas claim is inevitable.

14   The trial court's application of the multiple victim circumstance to the numerous offenses was

15   correct under California law and therefore did not violate Uribe's right to due process.

16   Uribe also does not persuade with his claim that the multiple victim circumstance, as

17   applied here, violated his constitutional right to be free from being placed twice in jeopardy. The

18   use of prior convictions to enhance sentences for subsequent convictions, for example, does not

19   violate the Double Jeopardy Clause. See Spencer v. Texas, 385 U.S. 554, 560 (1967) (upholding

20   use of prior convictions to enhance sentences for subsequent convictions even if in a sense

21   defendant must relitigate in sentencing proceeding conduct for which he was already tried);

22   Jackson v. Nelson, 435 F.2d 553, 553 (9th Cir. 1971) (dismissing double jeopardy challenge to

23   recidivist statute as meritless). Consideration of relevant conduct in determining a defendant's

24   sentence within the legislatively authorized punishment range does not constitute punishment for

25   that conduct. See Witte v. United States, 515 U.S. 389, 406 (1995). A court therefore may later

26

27    [2]Uribe's fourteen convictions and sentences under California Penal Code section 667.61
     were based on a multiple victim special circumstance. Uribe contends that because there were
28   only four victims, the court erred in applying that circumstance more than four times.

1    convict and sentence a defendant for a crime involving that conduct without violating the Double

2    Jeopardy Clause's prohibition against the imposition of multiple punishments for the same

3    offense. See United States v. Jernigan, 60 F.3d 562, 564-65 (9th Cir. 1995)(upholding defendant's

4    conviction for failing to appear even though, in prior case, defendant's sentence had been enhanced

5    for obstruction of justice based on the same failure to appear). The repeated use of the multiple

6    victim circumstance to determine the appropriate sentences on the many counts of which Uribe

7    was convicted did not violate his rights under the Double Jeopardy Clause.

8

9    E.      Substitution of Counsel Request

10          1.      Background

11          Uribe claims his right to effective assistance of counsel was violated when the trial court

12   failed to conduct an adequate inquiry about his claims against his attorney.

13          On November 8, 2000 (several months before trial began), defendant requested
     substitution of appointed counsel pursuant to People v. Marsden, supra 2 Cal. 3d 118.
14   During an in camera hearing, defendant told the trial court, "I feel like my attorney's not
     helping me."
15
            Defendant submitted a written statement in support of his Marsden motion.
16   Defendant complained that he did not meet with a defense investigator until about nine
     months after his arrest and that the investigator did not follow up when he told her he had
17   additional information for her. Defendant also asserted that he requested that his appointed
     counsel at the time, Deputy Public Defender Kleinkopf, ask for dismissal of the case
18   because "the District Attorney was not supposed to investigate this case personally."
     Counsel had refused to request dismissal on that basis. Counsel had also failed to follow
19   up on defendant's allegation that the deputy District Attorney had "a conflict of interest with
     this victim in a previous case."
20
            During the hearing, the trial court noted that "the gist of your complaints is that your
21   case was not investigated in a timely fashion." The trial court asked defendant if he wished
     to add anything. Defendant reiterated his complaint about the investigator failing to visit
22   him for some time. He reiterated his belief that it was improper for the Deputy District
     Attorney to perform personal investigation. He asserted that "the D.A. knows the mother
23   of the victim" and asked "that's conflict, right?" Defendant also added that he had asked the
     investigator and counsel "to check the D.A.'s investigator because they changed some
24   statements." Defendant complained that counsel had not "fought to remove some of the
     charges" and had not given him "reports about what's going on." He complained that counsel
25   was pressuring him into accepting a plea bargain.

26          The trial court addressed defendant's complaints: "I'm not aware of anything that
     prevents the District Attorney from investigating the case. As far as the District Attorney
27   being acquainted with someone who's a complaining witness in the case, in these cases I
     think that probably inevitably happens that at some point the District Attorney becomes
28

                                                 18

acquainted with the people involved in the case. I don't know if you're suggesting that the District Attorney had a friendly relationship with one of the witnesses in the case before this case arose or simply that a relationship of some sort has developed as the case has progressed. If you know."

After defendant requested the trial court "repeat that last part," the trial court stated: "You indicated one of the things that you think is a problem, I'm not sure why it's a problem involving your attorney, but that the District Attorney has a relationship or a friendship with one of the witnesses in the case or the victim in the case or something. I'm not sure exactly what you mean, but again I'm not clear if that's some sort of friendship relationship that arose before this case arose or if this is something that's developed after this case started." Defendant stated, "They knew each other before." Defendant asserted that his former retained counsel and his current attorney had both confirmed that fact.

The trial court next explained that defendant's former counsel had brought a motion to dismiss some of the charges and that "[y]ou can't keep making the same motions over again if it was made and denied."

Counsel asserted that he tried to follow up on everything defendant told him. He stated that he had visited defendant "fairly regularly" and explained that his investigator had been sick for over three weeks, but was working on the investigation. Counsel stated that he was not going to make a motion to relieve the prosecutor because he did not believe she had done anything improper by talking to witnesses.

Counsel opined that defendant's <u>Marsden</u> request was precipitated by counsel's advice that defendant accept the prosecutor's offer. Counsel had explained to defendant the weaknesses in the case, and defendant had become angry, claiming his innocence. Counsel asserted, "I will do the best I can with what I have, and I will advise him based on what I see, what the evidence is in the case, and I'm not going to just tell him what he wants to hear." Counsel noted that the case was set for trial the following week, and asserted that he would probably be ready at that time.

Defendant asked the trial court, "If you're not going to [replace counsel], I ask if you could give me more time so they can do a good investigation. . . ."

The trial court denied the <u>Marsden</u> motion, finding no "legal basis to remove your attorney." The trial court found that counsel had made "a good faith effort to get this case investigated, get it ready for trial" and indicated that it would grant the defense additional time for investigation if necessary.

Ultimately, Deputy Public Defender Kleinkopf withdrew from the case and was replaced by Deputy Public Defender Hatcher, who represented defendant throughout trial.

Cal. Ct. App. Op. pp. 39-41.  The trial date that had been set to start the week after the <u>Marsden</u> hearing was postponed for a few months by agreement of the parties. <u>See</u> Nov. 18, 2000 RT 18.

2. <u>Analysis</u>

The Sixth Amendment grants criminal defendants who can afford to retain counsel a qualified right to hire counsel of their choice. <u>See</u> <u>Wheat v. United States</u>, 486 U.S. 153, 159, 164

**United States District Court**
For the Northern District of California

(1988). A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing. See id. Nor is he entitled to an attorney who likes and feels comfortable with him. The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel. See Morris v. Slappy, 461 U.S. 1, 14 (1983).

In California, People v. Marsden, 2 Cal. 3d 118 (1970), requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing. The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas. See generally Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir. 2000). In reviewing the state courts' rejection of a Uribe's Sixth Amendment claim, the "ultimate constitutional question" on federal habeas review is whether the state trial court's denial of the Marsden motion "actually violated [petitioner's] constitutional rights in that the conflict between [the defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Schell, 218 F.3d at 1026.

Uribe's claim is somewhat ambiguous in that one cannot determine whether it is a claim that his right to counsel was violated or that the counsel provided ineffective assistance. The claim fails under either approach.

The California Court of Appeal properly upheld the trial court's denial of Uribe's request. Uribe moved for substitution of counsel and, in accord with the dictates of the Sixth Amendment, the trial court inquired into Uribe's concerns. See Hudson v. Rushen, 686 F.2d 826, 831 (9th Cir. 1982) (state court conducted adequate hearing when it invited defendant to make a statement and listened to defendant's reasons for wanting new counsel). The record shows that the trial court made a thorough inquiry into Uribe's complaints about counsel. During the hearing the court asked Uribe to state his complaints about his attorney and the court listened and attempted to clarify some of Uribe's complaints. The court then allowed Uribe's attorney to respond to each of the complaints. Uribe spoke again after his attorney and then the court made its ruling. The record

**United States District Court**
For the Northern District of California

1    indicates the court contemplated the reasons supporting Uribe's motion before denying the

2    motion.

3            The trial court's determination that counsel was performing adequately and that no

4    irreconcilable conflict existed was not unreasonable. Counsel had explained that his investigation

5    of the case was ongoing (although it had been hampered by the illness of his investigator) and he

6    intended to continue the investigation. Nov. 8, 2000 RT 10. Counsel explained that he chose not

7    to move to recuse the district attorney because the relationship between the district attorney and

8    the mother of one of the complaining victims did not appear a sound basis for such a motion.

9    See id. at 9.  Counsel opined that a large part of Uribe's frustration with him  resulted from

10   counsel's performance of his professional obligations, i.e., refusing to renew unsuccessful

11   motions, providing a legally accurate analysis of the case rather than just agreeing with everything

12   the client said, being civil toward the district attorney (who Uribe intensely disliked), and relaying

13   plea bargain offers from that district attorney to Uribe.  See id. at 10-13.  In light of the

14   information provided at the hearing, it was not unreasonable for the court to think that Uribe's

15   frustration with appointed counsel's exercise of his professional obligations would continue with

16   new counsel and therefore did not warrant new counsel.  That is, new counsel also would also have

17   to refuse to refile unsuccessful motions, would have to tell Uribe the harsh realities of his

18   defense, would have to deal with the district attorney in a civil manner, and would have to relay plea

19   bargain offers that Uribe did not want to hear.  Appointment of new counsel wouldn't end the

20   frustration that was more a product of Uribe's predicament as a criminal defendant rather than

21   counsel's behavior.  And the fact that counsel had not completed his investigation also did not

22   show an irreparable breakdown of the attorney-client relationship as counsel indicated he was

23   continuing to investigate the case.  Finally, even if one assumed there had been an adequate

24   showing to require the appointment of a new attorney, Uribe received that relief when a new

25   attorney was later appointed to replace the defense attorney about whom Uribe had complained.

26

27           If Uribe's claim is viewed as one for ineffective assistance of counsel by the attorney who

28

**United States District Court**
For the Northern District of California

1   was the subject of the Marsden motion, his claim also would fail.  After the Marsden hearing,

2   another attorney was substituted in to represent him.  The defense counsel against whom Uribe

3   filed the Marsden motion was not the attorney representing Uribe at trial and Uribe has provided

4   no evidence at all that the former attorney did anything that was irreparably harmful to his defense

5   at trial.  He has shown no prejudice, as he must to prevail on an ineffective assistance of counsel

6   claim.  See Strickland v. Washington, 466 U.S. 668, 691-94 (1984) (ineffective assistance of

7   counsel claimant must show deficient performance and resulting prejudice, i.e., that there is a

8   reasonable probability that, but for counsel's errors, the result of the proceedings would have been

9   different).

10       Bearing in mind that the "purpose of providing assistance of counsel 'is simply to ensure

11   that criminal defendants receive a fair trial,'" Wheat, 486 U.S. at 159, this court sees no evidence

12   that that purpose went unfulfilled in this case or that a Sixth Amendment violation occurred.  The

13   California Court of Appeal's rejection of Uribe's claim was neither contrary to nor an unreasonable

14   application of clearly established federal law.  Accordingly, Uribe is not entitled to the writ on this

15   claim.

16

17   F.    Cumulative Error

18       Uribe claims the cumulative effect of the errors set out in his petition deprived him of his

19   rights to due process and a fair trial.  In some cases, although no single trial error is sufficiently

20   prejudicial to warrant relief, the cumulative effect of several errors may still prejudice a defendant

21   so much that his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893 (9th

22   Cir. 2003).  Here, there was at most a single error as both this court and the California Court of

23   Appeal decided that the admission of the confession was harmless error (if any error at all).  The

24   cumulative doctrine does not warrant any relief when there is only one possible error and it has

25   been determined to have been harmless.

26

27                              **CONCLUSION**

28

22

The petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

IT IS SO ORDERED.

DATED: September _15__, 2005

_____
SUSAN ILLSTON
United States District Judge